IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM RUSSELL, )<br>)<br>　　　　　Petitioner, )<br>)<br>vs. )<br>)<br>DAMON ACUFF, in his official capacity )<br>　　　as Warden of Pulaski County )<br>　　　Detention Center, )<br>HENRY LUCERO, in his official capacity )<br>　　　as Field Office Director, Chicago )<br>　　　Field Office, U.S. Immigration and )<br>　　　Customs Enforcement, )<br>TAE D. JOHNSON, in his official capacity )<br>　　　as Acting Director, U.S. Immigra- )<br>　　　tion and Customs Enforcement, )<br>and ALEJANDRO MAYORKAS, in his )<br>　　　official capacity as Secretary, U.S. )<br>　　　Department of Homeland Security, )<br>)<br>　　　　　Respondents. ) | Case No. 21-cv-381-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner William Russell is in immigration detention at the Pulaski County Detention Center in Ullin, Illinois ("Pulaski"). He filed an Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 on April 13, 2021, seeking immediate release on the basis that his serious medical conditions, including his likely need for an amputation, have rendered his detention unconstitutional. (Doc. 1). Respondents oppose the Petition, asserting that Russell's removal from the United States is imminent and habeas relief is not proper or warranted based on the conditions of his confinement. (Doc. 11). Russell filed a Reply. (Doc. 13).

1

Based upon the Court's review and consideration of the parties' briefs and documentation, and for the reasons that follow, the Court denies Russell's request for habeas corpus relief.

## BACKGROUND

Russell, a 61-year-old citizen of Jamaica, has lived in the United States since his entry in 1976 without inspection. (Doc. 1, p. 3; Doc. 11, p. 1). He has seven U.S. Citizen children, ages 13 to 28. His medical conditions include insulin-dependent Type 2 diabetes mellitus, hypertension, asthma, and obstructive sleep apnea for which he uses a CPAP machine nightly. (Doc. 1, pp. 5-6). He contracted COVID-19 at Pulaski in September 2020 and was hospitalized for chest pain and shortness of breath. (Doc. 1, p. 7).

At an undetermined date, Russell developed swelling and pain in his right foot, and on March 2, 2021, he was referred to an orthopedic specialist.[1] The orthopedist took x-rays and prescribed a 2-week course of oral antibiotics on March 3, 2021, for possible osteomyelitis (bone infection). (Doc. 12-1, pp. 25-26; Doc. 12-3, pp. 24-25). At a follow-up appointment on March 15, the orthopedist noted improvement and continued the antibiotic treatment. (Doc. 12-3, p. 31). On April 1, the doctor noted he was "back to his baseline[;]" there was "no indication for surgery at this point" but "[h]e ultimately may need surgery." (Doc. 12-3, p. 37). Russell's course of antibiotics ended on April 4, 2021, and his foot began to swell again. (Doc. 13, p. 4). On April 14, 2021 the Pulaski physician recommended another referral to the orthopedist "for recurrence/non-resolution of possible osteomyelitis" after Russell stated he

---

[1] Russell asserts that he complained of foot pain and swelling for "several weeks" before he was given an x-ray and an outside referral. (Doc. 1, p. 7). His medical records do not reflect any complaint about the foot condition before March 2, 2021. (Doc. 12-1, pp. 26-38).

felt the foot infection may not be completely resolved. (Doc. 12-4, p. 5). The doctor took him off his work duty in the kitchen because of the foot swelling on April 16, 2021. (Doc. 13, p. 4). As of April 21, Russell had not yet returned to the orthopedist. (Doc. 13, p. 3). His podiatrist prescribed special diabetic shoes on or before April 13, 2021, but these have not yet been provided. (Doc. 12-4, pp. 3-4; Doc. 13, p. 3).

Russell also claims that he has been housed in cells where the low temperatures have rendered his CPAP machine ineffective. (Doc. 1, p. 8).

Russell was convicted of several state criminal offenses between 1993 and 2015, and in August 2017 he was convicted of the federal offenses of aggravated identity theft and false statements in a passport application and served 40 months in federal prison. (Doc. 1, p. 10; Doc. 11, pp. 1-2; Doc. 11-1, pp. 2-4). Upon his release, Immigration and Customs Enforcement ("ICE") took him into custody on July 7, 2020, and he has been in ICE custody since then. (Doc. 11, p. 2). Russell admitted he was subject to deportation and did not seek relief from removal; his final administrative removal order was issued on July 20, 2020. (Doc. 11, pp. 2-3).

ICE initiated a request for travel documents in July 2020 and made several follow-up inquiries over the ensuing months; medical clearance from the Jamaican Ministry of Health and Wellness related to Russell's continued medical care on his return to Jamaica was required before travel documents would be issued. (Doc. 11, pp. 3-4; Doc. 11-1, pp. 6-9). On April 16, 2021, the Jamaican Embassy notified Respondents that a travel document was being issued. *Id.* ICE plans to transfer Russell by April 19 to an out-of-state detention center where he will undergo medical and security checks and receive a 2-month supply of medication before his departure. Respondents state Russell is scheduled to be flown to Jamaica on an ICE

charter flight during the last week of April 2021. (Doc. 11, p. 4).

Respondents have kept Russell in custody on the basis that he entered the U.S. illegally and has a criminal history that "makes him a security and flight risk." (Doc. 11, p. 5). His removal proceedings were based on 8 U.S.C. § 1227(a)(2)(A)(iii), which provides for removal of a noncitizen convicted of an "aggravated felony" as defined in 8 U.S.C. § 1101(a)(43)(R).[2] (Doc. 11, p. 2; Doc. 11-1, p. 4). Respondents have denied Russell's request for release on supervision. (Doc. 11, p. 6).

## DISCUSSION

Russell is in detention pursuant to 8 U.S.C. § 1231(a) ("Detention and Removal of Aliens Ordered Removed") because a final administrative removal order has been issued for him. (Doc. 11, p. 3). Removal should ordinarily take place within 90 days of the final removal order, but detention may be extended for a person who, like Russell, is removable under 8 U.S.C. § 1227(a)(2).

Under 28 U.S.C. § 2241, a federal habeas court may grant release to a person who "is in custody in violation of the Constitution or laws or treaties of the United States." Noncitizens may challenge the fact of their civil immigration detention via a Section 2241 petition, *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001), and courts may consider individualized challenges to the constitutionality of immigration detention. *See Jennings*, 138 S. Ct. at 851-52; *Nielsen v. Preap*, 139 S. Ct. 954, 972 (2019) ("Our decision today on the meaning of that statutory provision [§ 1226(c)][3] does not foreclose as-applied challenges—that is,

---

[2] Section 1101(a)(43)(R) includes offenses "relating to commercial bribery, counterfeiting, [and] forgery" in its definition of "aggravated felony."
[3] Section 1226(c) mandates detention of "criminal aliens" whose removal proceedings are still pending and authorizes release only in narrow circumstances.

constitutional challenges to applications of the statute as we have now read it."); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 500 (1973); *Zadvydas*, 533 U.S. 678, 687 (2001); *Vargas v. Beth*, 378 F. Supp. 3d 716, 722-23 (E.D. Wisc. 2019) (federal courts have jurisdiction over due process challenges to detention) (collecting cases).

*Zadvydas* addressed the permissible length of detention while the government attempts to execute a final removal order, finding that detention exceeding six months was presumptively unreasonable. *Zadvydas*, 533 U.S. at 682. Russell cites *Zadvydas* but does not argue that his detention has become unconstitutionally prolonged. Instead, he asserts that the conditions of his confinement are punitive and violate his Fifth Amendment right to due process. Specifically, Pulaski officials' alleged failure to provide necessary medical care for his serious foot condition, which he claims now requires "imminent" amputation, warrants habeas relief in the form of his release from custody under supervision. (Doc. 1, pp. 14-17; Doc. 13, p. 2).

Russell correctly notes that a number of courts (including this one) have granted habeas corpus release to immigration detainees after finding that their conditions of confinement, particularly their medical vulnerability to serious complications from COVID-19 infection during the pandemic, amounted to unconstitutional punishment. (Doc. 1, p. 17). However, the pleadings and documentation do not support such a conclusion in this case.

The Petition's allegations that Russell requires imminent amputation of his foot and possibly a portion of his leg are not borne out by his medical records. Doctors acknowledged that surgery may become necessary, but his treatment with antibiotics largely resolved the swelling and pain as of April 5, 2021. (Doc. 12-1, p. 16; Doc. 12-3, p. 37). That said, Russell's report that his foot swelling recurred after his course of antibiotics ended indicates the need

for additional evaluation and possible treatment. Also, the special diabetic shoes prescribed by his podiatrist had not been provided to him as of April 21, 2021. Another orthopedic referral was made on April 14, 2021; it is unknown whether Russell has seen the specialist since then.

The record also does not support Russell's claim that Pulaski officials ignored his complaints of pain. (Doc. 1, p. 3). He consulted Pulaski medical providers on six occasions between December 2020 and late February 2021, but no record was made of any complaint of foot or leg pain or swelling. (Doc. 12-1, pp. 28-38). The first documentation of Russell's complaint of pain/swelling in his ankle was on March 2, 2021, when the Pulaski physician ordered an x-ray and ibuprofen and sent Russell to the orthopedic specialist the very next day.[4] (Doc. 12-1, pp. 25-26). Subsequently, Russell returned to the orthopedist several times for follow-up consultation and treatment. (Doc. 12-1, pp. 8, 16, 22-24; Doc. 12-3, pp. 17-34). Russell has received pain medication as well as antibiotics, and both appear to have been ordered promptly after he initially sought medical assistance.

Respondents dispute Russell's claim that he was housed on many occasions on and before March 17, 2021, in cells where the low temperature caused him to be unable to use his CPAP machine. But even if Russell's claims are accepted, this factor would not tip the scale in favor of granting habeas relief at this juncture. It is unlikely that temperatures in Pulaski will be low enough in late April and early May for this problem to recur, and Respondents have likely moved Russell to another facility by now.

In summary, the evidence now before the Court does not support a conclusion that

---

[4] On March 3, 2021, Russell reported to the orthopedist that his ankle swelling started two months prior to that date. (Doc. 12-3, p. 19).

Russell's conditions of confinement at Pulaski are subjecting him to unconstitutional punishment that would warrant his release from custody. Moreover, Russell's imminent removal to Jamaica within the current week (where the health ministry has granted medical clearance for his return) cuts against his argument for immediate release because he would be required to surrender himself for deportation within a few days.

## DISPOSITION

**IT IS HEREBY ORDERED** that the Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is **DENIED,** and this entire action is **DISMISSED**. Dismissal is without prejudice to Russell renewing his request for habeas corpus relief if he is not removed to Jamaica by May 1, 2021, or if the circumstances of his detention substantially change.

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  April 26, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**